


**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CASSAUNDRA HUMBER,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CASE NUMBER: __________** |
| **LINCOLN NATIONAL LIFE INSURANCE COMPANY, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC. , TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA., INC. HEALTH AND WELFARE BENEFIT PLAN,** | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

Comes now the Plaintiff, Cassaundra Humber and hereby files her Complaint against Lincoln National Life Insurance Company, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Engineering & Manufacturing North America, Inc. Health and Welfare Benefit Plan.

**PARTIES**

1. The Plaintiff, Cassaundra Humber ("Humber"), is a participant under an ERISA-governed disability policy within Toyota Motor Engineering & Manufacturing North America, Inc., Health and Welfare Benefit Plan, Group Long Term Disability Policy Number GF3-860-066619-01, who has been improperly denied disability benefits.

2. Defendant, Lincoln National Life Insurance Company ("Lincoln") is the Claims Administrator for the Plan issued to Plan Sponsor, Toyota Motor Engineering & Manufacturing North America, Inc. ("Toyota"). Defendants have improperly denied owed benefits to Humber under the Plan. Upon information and belief, Lincoln is a foreign corporation doing business throughout the United States, in the State of Alabama and in this district.

3. Defendant, Toyota Motor Engineering & Manufacturing North America, Inc., is a domestic corporation with its principal place of business at 6565 Headquarters Drive W1-3C, Plano, Texas 75024. On information and belief, Toyota Motor Engineering & Manufacturing North America, Inc., is the Sponsor and Administrator of the Plan.

4. Defendant, Toyota Motor Engineering & Manufacturing North America, Inc. Health and Welfare Benefit Plan, is an employee benefit plan as defined in 29 U.S.C. §1002 (3) that is, upon information and belief, the plan under

which Group Long Term Disability Policy Number GF3-860-066619-01is administered, and both sponsored and administered by Defendant, Toyota Motor Engineering & Manufacturing North America, Inc. with Defendant Lincoln serving as the claims administrator for the Plan.

**JURISDICTION AND VENUE**

5. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiff asserts claims for long-term disability benefits, extension of death benefits, enforcement of ERISA rights, and statutory violations of ERISA under 29 U.S.C. §1132. This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. §1132(a),(e)(1) and (f) and 28 U.S.C. §1131. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

**INTRODUCTION**

6. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Instead of promoting and protecting the interests of Ms. Humber, Defendants victimized her by engaging in utterly reprehensible claim handling procedures. The shortcomings of ERISA as it relates to claims for "welfare" benefits have been exploited by the Defendants to avoid

paying Ms. Humber's valid claims that would otherwise be payable under state insurance law. As described in more detail below, the Defendants have clearly engaged in bad faith claim handling and Ms. Humber, at a minimum, is patently entitled all relief that ERISA provides.

## STATEMENT OF FACTS

7. Ms. Humber is a participant under Toyota Motor Engineering & Manufacturing North America, Inc., Health and Welfare Benefit Plan, Group Long Term Disability Policy Number GF3-860-066619-01, an ERISA plan sponsored by her employer, Toyota Motor Engineering & Manufacturing North America, Inc. The plan provides participants, like Ms. Humber, long term disability ("LTD") benefits.

8. Ms. Humber is thirty-eight years old. She worked at Toyota Motor Engineering & Manufacturing North America, Inc. a production team member until she became disabled from all work as of April 11, 2016.

9. Ms. Humber's medical conditions include post-laminectomy syndrome and cervicalgia with multiple failed back and neck surgeries, MRSA infection following lumbar surgery, bilateral osteoarthritis of the knees, lumbar degenerative disc disease, fibromyalgia, arthritis, carpal tunnel in both wrists, severe hearing loss in both ears due to the spread of MRSA infections, joint pain, migraine headaches, memory loss, and debilitating chronic pain and fatigue. Ms. Humber has limited range of motion and suffers impairing side effects from her prescribed medications

including fatigue, drowsiness, and dizziness. Her restrictions and limitations from her medical conditions render Ms. Humber unable to perform all work as indicated by her treating physicians and the Social Security Administration.

10. Defendants approved and paid Ms. Humber for long-term disability benefits from October 10, 2016, until March 27, 2020, before terminating her long-term benefits by letter dated March 28, 2020.

11. Through counsel, Plaintiff submitted an appeal dated September 24, 2020.

12. Despite receiving extensive evidence showing Ms. Humber's continuing chronic pain, fatigue, limited range of motion, and other debilitating side effects from her necessary medications, Defendants issued a final denial for her LTD benefits by letter dated April 15, 2021.

13. In both the termination and appeal denial, Defendants relied on the opinions of their paid medical reviewers who never examined Ms. Humber.

14. Ms. Humber's treating physicians repeatedly opined that Ms. Humber has severely debilitating restrictions and limitations and could not return to work. Defendants' own medical reviewer, Dr. Henry Deleeuw, stated: "The claimant's prognosis is poor. She has been on chronic narcotics for several years and has been unable to wean off her medications. She has already undergone three spinal

surgeries and may be prone to further degeneration, stenosis and adjacent segment disease."

15. Defendants' relentless pursued disability benefits awarded and claimed an overpayment of the LTD benefits they did pay to Ms. Humber but did not give the approval any further consideration.

16. As of this date Ms. Humber has been denied benefits rightfully owed to her under the plan. Defendants' decision to deny LTD benefits under the plan was grossly wrong, without basis and contrary to the evidence.

17. Ms. Humber met and continues to meet the plan definitions of "disabled."

18. The Defendants did not establish and maintain a reasonable claim procedure or provide a full and fair review of Ms. Humber's claim as required by ERISA. Instead, Defendants acted only in their own pecuniary interests and violated ERISA by conduct including, but not limited to, the following: reviewing the claim in a manner calculated to reach the desired result of denying benefits; failing to properly consider and credit the medical opinions of Ms. Humber's medical providers; and failing to have Ms. Humber submit to independent medical exams as allowed by the Plan.

19. Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to any other entity who may have

adjudicated Ms. Humber's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of Plaintiff's benefits constitutes an abuse of discretion.

20. Upon information and belief, Lincoln was required to both evaluate and pay claims under the Plan at issue, creating an inherent conflict of interest.

21. Ms. Humber has exhausted any applicable administrative review procedures, and Defendants' refusal to pay benefits is both erroneous and unreasonable and has caused tremendous financial hardship on Plaintiff.

## DEFENDANTS' WRONGFUL AND UNREASONABLE CONDUCT

### A. Defendants' Determination that Plaintiff does not Meet the Definition of Disability as Stated in the Plan was both Erroneous and Unreasonable.

22. The Long-Term Disability plan at issue states, in part:

> **"Disability"** or **"Disabled"** means:
> For persons other than pilots, co-pilots, and crewmembers of an aircraft:
>
> that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>
> thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

(*See* Exhibit "A").

23. Ms. Humber's treating physicians and the Social Security Administration all determined that Ms. Humber's restrictions and limitations were so severe that she would be unable to perform any work at any exertional level. However, Defendants ignored those supported opinions and based their denial on flawed and unreliable medical and vocational evidence and analyses that were obtained from biased and conflicted sources. Defendants also disregarded reliable evidence establishing Ms. Humber's ongoing disability.

24. Ms. Humber struggles with debilitating pain and symptoms from her conditions every single day. Defendants' assertion that she is not disabled is at the very least unreasonable.

**B. Defendants' Decision to Terminate Long Term Disability Benefits was not Supported by Substantial Evidence.**

25. In their consideration of Ms. Humber's claim, Defendants only retained paid consultants to review her medical records. The sole reason for Defendants' termination was based on the opinions of paid paper reviewers, who never actually examined Ms. Humber, and determined that she did not suffer disabling restrictions and limitations.

26. Considering the nature of her conditions and her well-documented struggles with treatment, the notion that she is not restricted from work is absurd. Based on the language of the policy and common-sense practice, Defendants could have requested an independent medical examination of Ms. Humber. Instead, they

determined that an in-house vocational analysis and a medical file review were superior to years of treatment records and recommendations from Ms. Humber's actual treating physicians.

27. Ms. Humber's medical file clearly demonstrates that she is disabled. Ms. Humber's treating physicians have attested to her disabilities on multiple occasions. Defendants had access to records from Ms. Humber's treating physicians clearly documenting Ms. Humber's constant struggle with debilitating pain and the symptoms from her many serious medical conditions.

28. The records of Ms. Humber's long-standing medical providers, who have no stake in the outcome of the case, clearly evidence that she is disabled based on their numerous personal examinations, testing, and procedures. Their opinions are consistent with the record as a whole.

29. Defendants' hired medical reviewers, on the other hand, did not examine Ms. Humber. The conclusion that Ms. Humber was not disabled was based merely on hired reviewers' assessment of her medical records. The opinions of Defendants' medical reviewers do not support the revocation of benefits because the opinions of these non-examining consultants hired by the insurance company are the only "evidence" contrary to the opinions of Ms. Humber's treating physicians.

30. Not only did Defendants' hired medical consultants never examine Ms. Humber but there is no evidence to support their position that she was less restricted than indicated by her treating physicians.

31. Ms. Humber's own medical physicians' evaluations were objective and reliable and should have been afforded far greater weight than those of consultants hired by Defendant. Accordingly, Defendant's termination of Ms. Humber's LTD benefits was based on insufficient evidence.

**C. Defendants' Failure to Properly Credit Ms. Humber's Well-Documented Complaints Pain was Arbitrary and Capricious.**

32. Ms. Humber's primary disabling impairments have been established by objective proof and have been diagnosed by her treating physicians based on her medical history, surgical interventions, physical examinations, imaging and observation.

33. While pain can be a subjective component of Ms. Humber's conditions it is reasonable and expected that her conditions would cause the level of pain claimed by Ms. Humber.

34. In the denial letters, Defendants made no mention of how Ms. Humber's severe pain and fatigue would affect her ability to perform work.

35. The record in this case reveals well-documented complaints of debilitating pain. There is no objective evidence to contradict Ms. Humber's complaints and therefore Defendants cannot discredit her subjective complaints.

36. It was substantively unreasonable for the Defendants to deny benefits for Ms. Humber's disabilities involving subjective elements such as pain and fatigue.

37. Ms. Humber has submitted credible evidence of the subjective components of her conditions and objective evidence of the underlying conditions causing her pain.

38. Defendants made no effort to evaluate the veracity of Ms. Humber's claim and did not identify what objective evidence she could have or should have produced to be sufficient to prove subject elements of her claim.

39. Ms. Humber's medical records contain well-documented complaints of pain and treatments prescribed by her treating physicians. The records provided to Defendants show Ms. Humber's long-time struggles with pain, fatigue, limited mobility, as well as a host of other side effects from her necessary medications.

40. Defendants did not credit these well-documented complaints or the opinions of Ms. Humber's treating physicians, and instead unreasonably denied her claim.

41. In its review, Defendants also failed to consider non-exertional limitations including (1) impaired concentration due to pain and medication side effects; (2) limited dexterity and range of motion; and (3) a limited ability to remain seated for an extended period of time. Such non-exertional limitations are important aspects of vocational capacity that Defendants did not properly evaluate.

## CAUSES OF ACTION

### Count One
### ERISA (Claim for Benefits Owed under Plan)

42. Plaintiff hereby incorporates by reference every fact as if it were restated herein.

43. At all times relevant to this action Ms. Humber was a participant of Toyota Motor Engineering & Manufacturing North America, Inc., Health and Welfare Benefit Plan, Group Long Term Disability Policy Number GF3-860-066619-01, an ERISA plan sponsored by her employer, Toyota Motor Engineering & Manufacturing North America, Inc., within the meaning of 29 U.S.C § 1002(7) and was eligible to receive disability benefits under the Plan.

44. As more fully described above, the denial, termination, and refusal to pay Ms. Humber benefits under the Plan for the period of at least on or about March 2020 through the present constitutes a breach of Defendants' obligations under the plan and ERISA. The decision to deny benefits to Ms. Humber was not reasonable and it was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1. The applicable standard of review in this case is *de novo*;

2. That the Court may take and review the records of Defendants and any other evidence that it deems necessary to conduct an adequate *de novo* review;

3. From at least April 2016 through the present, Ms. Humber met the Plan's definition of disabled;

4. Defendants shall pay Ms. Humber all benefits due for the period from at least April 2020 through the present in accordance with the policy;

5. Defendant shall pay Plaintiff compounding prejudgment interest on all contractual benefits that have accrued prior to the date of judgment in accordance with 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3);

6. Defendant shall continue paying Plaintiff's benefits in an amount equal to the contractual amount of benefits to which she is entitled through the Plan's Maximum Benefit Periods so long as she continues to meet the Plan's conditions for continuance of benefits;

7. Defendant shall pay attorney's fees for Plaintiff's counsel pursuant to 29 U.S.C. § 1132(g);

8. Plaintiff be awarded any and all other contractual and/or equitable relief to which she may be entitled, as well as the costs of suit.

Respectfully Submitted,

/s/ *Amanda Stansberry*
Amanda Stansberry (ASB-7793-M64S)

STANSBERRY LAW, LLC
3535 Grandview Parkway
Suite 310
Birmingham, Alabama 35243
Phone: 205-383-7996
Fax: 833-583-4357
amanda@stansberrylaw.com

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

Lincoln National Life Insurance Company
c/o The Prentice-Hall Corporation System, Inc.
641 South Lawrence Street
Montgomery, AL 36104

Toyota Motor Engineering & Manufacturing North America, Inc.,
c/o CT Corporation System
2 North Jackson St., Suite 605
Montgomery, AL 36104

Toyota Motor Engineering & Manufacturing North America, Inc. Health and Welfare Benefit Plan
c/o CT Corporation System
2 North Jackson St., Suite 605
Montgomery, AL 36104